UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYMOND PAYTON                                    CIVIL ACTION

VERSUS                                            NO. 12-2578

SHERIFF MARLIN GUSMAN                             SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Raymond Payton, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman. Payton alleges that while incarcerated in OPP beginning in October 2012, he has been subjected to unconstitutional conditions of confinement and has received inadequate medical care.  He seeks $1.5 million in monetary damages and injunctive relief, Record Doc. No. 1 (Complaint at ¶ V), or a "settlement" in the amount of $100,000 and other relief, including his "immediate release from jail."  Record Doc. No. 16 at p. 5.

On January 28, 2013, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for the Sheriff.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Payton testified that at the time of the conference he was incarcerated in OPP as a pretrial detainee awaiting trial scheduled to occur on February 5, 2013 on domestic abuse charges. He stated that he was arrested on this charge on October 7, 2012, at which time he was brought to the Central Lockup facility at OPP for booking.

Payton confirmed the allegations in his complaint and other written submissions, Record Doc. Nos. 1 and 8, that his first claim in this case is that he was subjected to unconstitutional conditions of confinement when he was kept in a holding cell in Central Lockup for three days before being transferred to another OPP facility and that the conditions in Central Lockup during that three-day period were improper. He said that Central Lockup is an area that is "just supposed to be for booking for three hours. They kept me there for three days; no mattress, I had to sleep on the concrete floor. They . . . gave me baloney sandwiches at morning, noon and afternoon. They had no showers because that's just a booking cell, booking facility, and they had no hot running water; we got no toothpaste, we got no soap, we got no shower.  Those were the conditions I was subjected to."

Payton testified that he was exposed to these conditions for three days, on October 7, 8 and 9, 2012, before he was transferred on October 9th to the tent facility in OPP. He stated during the conference that his conditions claim in this case relates only to the three

days he spent in Central Lockup, where he was kept in a big open space with 40 or 50 other inmates in the area for three days.

As to his medical care, Payton testified that before his arrest, he had been diagnosed with a degenerative disc or bone disease, which has caused him to be disabled and for which he was taking medication daily, including Vicodin and Naprosyn. He said that he did not have his medications with him when he was arrested and that Vicodin is not a medication that is provided at the jail, where substitute pain medications are all that are available. He complained that during his initial three days in Central Lockup he received no medication of any kind for his back pain, and that he did not receive his medication when he was first transferred from Central Lockup to the tents section of OPP.

Payton stated that he had not received a copy of the medical records that I previously ordered defendant to produce.  Record Doc. Nos. 6 and 15.  He confirmed, however, the notation in the medical records that he was screened concerning his medical conditions in the Central Lockup booking process, during which he told the booking officer about his degenerative disc disease and the medications he had been taking for it.  Payton also confirmed that on October 9th, after his transfer from Central Lockup to the tents, he submitted the first of several written sick call requests for medication for his back pain.  He stated that he talked to a nurse on that date, and was told that he must see

a doctor before he could receive his medications, but he saw no one and received no medication for his back pain for about 30 days.  He complained that when he finally saw someone, it was not a doctor but a nurse-practitioner.  Payton stated that he began to receive medication some time in early November 2012, when he was given Ibuprofen and Naprosyn for his back pain and sinus-tabs for a sinus condition. He blamed his sinus problems on the heavy dust he experiences in the tents facility at OPP, where he was then incarcerated.  He said that the exact date on which he saw the nurse-practitioner and began receiving these medications was probably November 1, 2012, as reflected in the "Provider Note/Order" signed by Nurse-Practitioner D. Gray on that date and contained in his medical records.  Record Doc. No. 15.

Payton complained that he now receives medication only for two-week periods, and when the two-week period is up, the medication stops coming and he has to submit another sick call request to be reevaluated by the nurse-practitioner, who then places him on the list for provision of the medications for another two-week period.  He complained about the recurring need for medical reevaluation by the nurse-practitioner every two weeks. "I constantly get reevaluated for the same thing over and over, and that's not how it's supposed to be if you have a sickness," he said.  "It's supposed to be continual giving you medication.  That's why I say it's inadequate medical care."  He complained that he

4

has been reevaluated by the nurse-practitioner three or four times, but he has never yet seen a doctor.

Payton stated that although he is currently receiving his medication, the latest two-week provision period authorized by the nurse-practitioner is about to lapse, and he will have to see her again for reevaluation, so she can again reauthorize the medication for another two weeks.

Payton testified that when he receives the medication as authorized by the nurse-practitioner at OPP, it helps his back pain and that the hot showers he is now able to take also help his condition.  He complained, however, that the medication he is now provided is not as strong as the Vicodin he was taking before his arrest, but he said he makes up for it by taking more Ibuprofen and by taking hot showers.

After the Spears hearing, Payton submitted a written "Request for Judicial Settlement," Record Doc. No. 16, in which he expanded upon his allegations concerning the conditions of his confinement and his medical care.  He stated that "I'm in a tent with eighty (80) other people with only two showers that work, there's dust on air filter and in the tent."  Id. at p. 3.  He alleged that he has been "outside one time" in 90 days; that he is 58 years old and "suffered pain from sleeping on concrete floors without a mattress for three days" while in Central Lockup; and that "it took me a month to receive pain medication" for his "degenerative bone disease."  Id. at pp. 3-4.

## ANALYSIS

I.   <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir.

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his various written submissions and testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.    UNDERLINE CONDITIONS OF CONFINEMENT

Payton was a pretrial detainee, including particularly during the three-day period of his confinement in the Central Lockup booking area of OPP, at all times that form the basis of his claims in this case.

Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.   McCarty v. Zapata County, 243 F. App'x 792, 794 (5th Cir. 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's particular situation or in the circumstances concerning his treatment as described in his Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended

condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009).

Applying this standard, Payton's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 847.  A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Payton's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Payton alleges no serious harm or risk of serious harm in the constitutional sense, and the court can

perceive none under the circumstances described in plaintiff's testimony and written submissions.

The Constitution requires that prison officials provide prisoners with only reasonably adequate food, shelter and sanitation.  Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions.  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Short-term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, 351 Fed. Appx. 274, 2009 WL 3438004, at *4 (10th Cir. 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

None of Payton's allegations about the conditions he experienced in Central Lockup for the three days during which he slept on a concrete floor, ate baloney

sandwiches and was unable to shower, or during his subsequent incarceration in OPP's tents facility, establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment."); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215; Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Plaintiff complained that his meals consisted of "baloney sandwiches at morning, noon and afternoon." States violate the Constitution if they fail to provide prisoners with

13

reasonably adequate food, shelter and sanitation.  Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977), rev'd in part on other grounds sub nom Alabama v. Pugh, 438 U.S. 781, 915 (1978); George v. King, 837 F.2d 705, 707 (5th Cir. 1988); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974).  However, Constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)).

Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food.  The Constitution does not require that convicted inmates be provided with particular foods or every culinary amenity which one may find desirable. Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom., Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)); Murray v. Matty, 1985 WL 4948 at *1 (E.D. Pa. 1985).  The Constitution also does not require that plaintiff receive particular amounts of food, Green, 801 F.2d at 770, or that his food be served by persons who are not themselves inmates. "[I]nmates cannot expect the amenities, conveniences and services of a good hotel."  Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

As to overcrowding, which Payton appears to allege when he complains about being held with 40 or 50 other inmates in Central Lockup for three days and 80 other

inmates in the tents, "the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. . . .  '[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.'" Morrison v. Gusman, No. 10-217, 2010 WL 724173, at *7 (E.D. La. Feb. 22, 2010) (Zainey, J.) (quoting Castillo v. Cameron County, 238 F.3d 339, 354 (5th Cir. 2001)) (citing Rhodes, 452 U.S. at 347-50) (additional citations omitted).

The Fifth Circuit has not rendered a binding precedential decision concerning the constitutionality of a temporary mattress deprivation, but it addressed a situation similar to that alleged by Payton in an unpublished opinion.  The district court vacated the jury's verdict, which had found that depriving the plaintiff inmate of a mattress, blanket and toilet paper for two and one-half days violated the Eighth Amendment, and granted judgment as a matter of law to the prison official defendants.  The Fifth Circuit affirmed.

> The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold [who was] confined indoors [in northern Mississippi in November] does not constitute a deprivation of the minimal civilized measures of life's necessities. Although the conditions of [plaintiff's] confinement were uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Phillips v. East, 81 Fed. Appx. 483, 2003 WL 22770162, at *2 (5th Cir. 2003) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); Palmer v. Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999); Talib, 138 F.3d at 215; Novak v. Beto, 453 F.2d 661, 665-66 (5th Cir. 1971)).

Phillips was in a different procedural posture than the instant case, having

proceeded through a trial on the merits, and the Fifth Circuit considered the evidence that

had been introduced at trial concerning defendants' legitimate penological reasons for

depriving the inmate of a mattress.  Regardless of those reasons, the appellate court

plainly stated that the denial of a mattress for two and one-half days to an inmate who is

incarcerated indoors does not violate the Eighth Amendment.  Phillips is persuasive

authority that the Fifth Circuit would find that Payton's lack of a mattress for three (3)

days was not unconstitutional.  Several other circuits have held in recent years that

deprivation of a mattress for a limited period of time is not per se unconstitutional.  See,

e.g., Fischer v. Ellegood, 238 Fed. Appx. 428, 2007 WL 1624315, at *4 (11th Cir. 2007)

(sleeping on floor for five days does not violate Eighth Amendment); Stephens v. Cottey,

145 Fed. Appx. 179, 2005 WL 1971700, at *1(7th Cir. 2005) (no Eighth Amendment

violation when prisoner slept without a mattress on a metal bedframe for three days and

on the floor with no bedframe for five days); Grissom v. Davis, No. 02-1916, 2003 WL

343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket

was not deprivation of basic human needs when it did not cause serious harm); O'Leary

v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete

slab without mattress or blanket for four days in cell ten feet from exterior door during

winter did not deny plaintiff minimal civilized measures of life's necessities); Schroeder

v. Kaplan, No. 93-17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (sleeping on floor without mattress for four weeks does not violate Eighth Amendment).

Payton alleges no serious harm or risk of serious harm in the constitutional sense. In fact, he concedes that the only illness or other kind of injury or problem he experienced as a result of the conditions were a minor sinus irritation and back pain caused by his pre-existing degenerative disc disease, not by any prison condition.  Thus, Payton has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

III.    <u>MEDICAL CARE</u>

Payton testified that he has received inadequate medical care for his degenerative disc disease because delivery of his medication was delayed and differs from what he was prescribed before his arrest, and he has been seen only by a nurse-practitioner and not a doctor during his OPP incarceration.  Payton was a pretrial detainee at all relevant times about which he complains.

Before the Fifth Circuit's decision in <u>Hare</u>, 74 F.3d 633, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or

18

pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u>
at 645.  If the pretrial detainee is unable to prove either, the incident will be considered
to be an episodic act or omission, and the deliberate indifference standard enunciated in
<u>Estelle</u>, 429 U.S. 97, will apply.  <u>Shepherd v. Dallas County</u>, 591 F.3d 445, 452 (5th Cir.
2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997);
<u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing
<u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

        In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a
claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he
demonstrates that there has been "deliberate indifference to serious medical needs" by
prison officials or other state actors.  Only deliberate indifference, "an unnecessary and
wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes
conduct proscribed by the Eighth Amendment.  <u>Estelle</u>, 429 U.S. at 105-06; <u>accord</u>
<u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d
at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows
that the inmates face a substantial risk of serious harm and [he] disregards that risk by
failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847
(1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>,
27 F.3d at 176.

As with the conditions claim discussed above, an inmate who alleges constitutionally inadequate medical care must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him

20

incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'"  <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3368 (2010) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

Once again, "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," <u>Southard</u>, 114 F.3d at 551 (quoting <u>Board of County Comm'rs</u>, 520 U.S. at 410 (other quotations omitted)) (emphasis added), and "'[s]ubjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Payton must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

First, it cannot be concluded that the medical conditions Payton described, pain resulting from his preexisting degenerative disc disease and a minor sinus irritation, constituted serious medical needs. Plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). None of Payton's injuries rise to the level of serious medical needs for constitutional purposes.  See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs).

Second, even assuming, without concluding, that plaintiff's conditions presented serious medical need for constitutional purposes, Payton has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Payton testified and the medical records confirm that he received medication for his back pain and sinus condition and several regular evaluations by a nurse-practitioner for these conditions during his OPP incarceration.  Although Payton experienced some delay in receiving his medication, his conditions were regularly monitored and addressed by medical personnel in OPP.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See e.g., Hayes v. Dallas County, No. 3-08-CV-2136-K, 2009 WL 250029, at *3 (N.D. Tex. Jan. 30, 2009) ("The mere fact that plaintiff was in pain during that time [of delayed treatment] does not rise to the level of a constitutional violation."); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528, 2007 WL 2827547 (9th Cir. 2007) (No deliberate indifference when plaintiff's fractured thumb

was "examined and treated regularly . . . and pain medication was prescribed."); Estes

v. Bowers, No. 3-00-CV-1203-BD, 2002 WL 628755, at *2, 3 (N.D. Tex. Apr. 17, 2002),

aff'd, 73 Fed. Appx. 747, 2003 WL 22013460 (5th Cir. 2003) (To the extent that plaintiff

argued "that Motrin therapy was not the appropriate course of treatment for his [pre-

existing] back pain, he has failed to state a constitutional violation."  Neither a nine-day

delay in x-raying a fractured rib nor a failure to prescribe medications for the fracture,

in addition to the Motrin that plaintiff was already taking, were deliberate indifference.);

Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4

(S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry v. Johnson, 281 F.3d 1279,

2001 WL 1692494, at *1 (5th Cir. 2001); Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL

32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second

plaintiff was seen by medical personnel and received minimal treatment, including a pain

medication prescription.).

Although Payton alleges delay in receiving medical care in that he did not receive

medications he thought were necessary quickly enough, and he has expressed

dissatisfaction with the overall speed and quality of treatment, including the type of pain

medication he has received, none of his allegations rise to the level of deliberate

indifference necessary to establish a constitutional violation cognizable under Section

1983.

> [T]he decision whether to provide additional treatment is a classic example
> of a matter for medical judgment.  A showing of deliberate indifference
> requires the prisoner to submit evidence that prison officials refused to treat
> him, ignored his complaints, intentionally treated him incorrectly, or
> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs.  Deliberate indifference is an
> extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis
added).  No such showing has been made on the current record.  The decisions made by
the treating medical providers to prescribe the medications that they gave, rather than the
ones Payton was receiving before his arrest, are classic examples of the exercise of
"medical judgment," which, even if incorrect, cannot serve as the basis for a finding of
deliberate indifference in the constitutional sense.  See Rowe v. Norris, 198 Fed. Appx.
579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with
physician's choice of medication); Estelle, 429 U.S. at 107 (The "question whether an
X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic
example of a matter for medical judgment.  A medical decision not to order an X-ray, or
like measures, does not represent cruel and unusual punishment.  At most, it is medical
malpractice . . . ."); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir.
1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he
believed he needed a referral to a specialist, he failed to demonstrate deliberate
indifference when he was seen by prison medical personnel with results being within a

normal range.); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, Payton cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____4th_____ day of March, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

27